## Geary v. Taylor.

(Decided October 29, 1915.)

### Appeal from McCreary Circuit Court.

1. Principal and Agent—Authority to Make Lease.—A written power of appointment of an agent made by several tenants in common examined and held not sufficient to confer on the agent authority to lease land to persons not residing on the land.

2. Principal and Agent—Cotenants—Unauthorized Lease—Ratification.—Payment of money to an agent on a lease and unauthorized by certain cotenants will not amount to ratification by them, where the evidence fails to show that they, with knowledge of the fact that the lease had been made and the rent had been paid, received and retained any portion of the rent or derived any benefit therefrom in any settlement which they made with the agent.

3. Principal and Agent—Cotenants—Lease by Agent—When Not Binding.—A lease by an agent of property owned by several tenants in common is not binding on those who do not authorize or ratify it.

4. Tenancy in Common—Principal and Agent—Cotenants—Lease Made in the Name of a Company—Effect on Co-owner Authorizing Lease.—Where the co-owners of land frequently do business in the name of a company, a lease by an agent of the land in the name of such company is binding on a co-owner who authorized the lease.

5. Tenancy in Common—Cotenants—Lease by Part of the Co-owners—Effect.—Where property is owned by several tenants in common, a lease by one or more of them is not valid as to those who do not join in the lease, but operates merely to make the lessee a tenant in common with the other owners.

6. Tenancy in Common—Cotenants—Lease by One Co-owner—Breach—Liability.—The liability of a cotenant authorizing a lease of land held by several tenants in common is not the same as if he were the sole owner of the land.

7. Landlord and Tenant—Cotenant—Lease—Violation of by Cotenant Authorizing Lease—Measure of Damages.—In an action for damages by the lessee against a cotenant owning an undivided one-third interest in the land, and who authorized the making of a lease, which was to terminate when the land was sold, the

measure of damages is the difference between one-third of the agreed rent,. including the cost of certain fencing which the lessee agreed to do, and one-third of the rental value of the land up to the date when the sale became effective.

O. H. WADDLE & SONS for appellant.

HENRY C. GILLIS and J. B. SNYDER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Reversing.

Plaintiff, J. G. Taylor, brought this action originally against the Flat Rock Coal Company, the Geary Land & Development Company and A. P. Hodges to recover damages for failure on the part of the defendants to comply with a lease. Subsequently, John A. Geary, Ed. Dowling, D. G. Falconer and others were made parties defendant. The return of the service of process on the Flat Rock Coal Company was quashed. The court directed a verdict in favor of Dowling, Falconer and others, and a trial before a jury resulted in a verdict and judgment in favor of plaintiff against John A. Geary for the sum of $450. The amount in controversy being less than $500, exclusive of interest and costs, the defendant Geary has moved for an appeal.

The facts are as follows: About the year 1881, the Flat Rock Coal Company, a corporation, owned several thousand acres of land then located in Pulaski County, but now embraced in the new county of McCreary. Shortly thereafter, certain creditors of the company brought suit and the lands were sold and purchased by John A. Geary, Ed. Dowling, D. G. Falconer, John W. Lell, John B. Wilgus and John T. Miller, and were held by them from that time on as tenants in common. On April 8th, 1909, John A. Geary, Edward Dowling and D. G. Falconer, and the Security Trust Company of Lexington, as administrator of John B. Wilgus and executor of John W. Lell and John T. Miller, entered into a contract with A. P. Hodges, of Pulaski County, by which the following authority was conferred upon him:

"Second party is to have the general supervision and control of all of said lands and see that no person enters upon any part of said lands or trespasses or squats upon any part thereof, or cuts down, injures or destroys or carries away any trees that may be on same, or strips

the bark off any of the trees upon said land or in any way injures any of the same. As to any person or persons now located upon and in possession of any portion of said land without any record claim of title and who are merely in the occupation thereof, the said Hodges, if he thinks it is proper and prudent so to do, is authorized to make a lease with said persons for a term of one year and from year to year as may seem best for first parties. Said lease shall be made according to the form furnished to second party by first parties.

"The rent of said portions of land that may be leased or rented shall be collected by second party, and second party shall account for said rents and pay the same over on the first day of each and every month to first parties. Such timber as may have been cut and that is now lying upon said land may be sold where it lays on the land by second party for the best cash price he can get for it, the same to be removed by the purchaser at his own cost and expense. He shall account to and pay the purchase price over on the first day of each and every month to first parties. Second party shall do all he can to aid the first parties in every way possible to get the possession and control of any portion of said lands that are claimed by persons who have located or squatted upon the same or any part thereof and who have no valid claim or title thereto or any claim or title of record. Second party shall take the full supervision and control of said lands and give his services and attention to the keeping, preservation and care thereof. He shall not cultivate or crop any portion of said land. Second party shall not commit or permit any waste to be committed on said land. He shall not cut or allow any trees to be cut, barked or injured or carried away. He shall not permit any person to trespass upon said land or take possession of any part thereof or cut down or injure any trees or strip or bark any of them in any manner whatever. He shall make reports as to said lands from time to time to first parties on the last Saturday in each month. For all of his services herein he shall be paid by first parties ten dollars ($10.00) per week, said payments to be made as herein provided, in proportion to the interest the first parties and each of them have in and to said land as follows."

On August 3rd, 1909, John A. Geary sent a letter to Hodges containing the following language:

"* * *, and make lease for that cattle range the best you can; best not make it for too long a period, but use your own judgment."

On August 14th, 1909, Hodges, in the name of the Flat Rock Coal Company, as party of the first part by him as agent, leased to J. G. Taylor, party of the second part, a portion of the lands in question for purposes of pasturage. The lease provided that it should continue for a term of ten years, unless the premises should be transferred by the Flat Rock Coal Company. Taylor agreed to pay $25.00 on the first of January of each year, and further agreed to inclose the heads of Straight Creek with a good and sufficient fence and to keep same in repair during the term of the lease. The contract was signed by J. G. Taylor and A. P. Hodges, "Agent Flat Rock Coal Company." The first installment of rent was paid on January 1st, 1910. Shortly thereafter, Geary notified Taylor not to do the fencing or take possession of the land. It further appears from the evidence that none of the joint owners, except Geary, knew anything of the alleged lease and had never authorized Geary or Hodges to execute the lease. At that time there was a suit pending for the settlement of the estates of John B. Wilgus, John T. Miller and John W. Lell, and these proceedings were all consolidated for the purpose of disposing of the lands in Pulaski County. The lands were sold on September 10th, 1910. The sale was confirmed on October 10th, 1910, and a deed made to the purchaser on May 18th, 1912. Geary says that he never intended that Hodges should go ahead and make the lease without consulting the owners, but intended that he should prepare the lease and send it back for approval, as had always been done.

It is clear, we think, that the above contract between the joint owners and Hodges is not sufficient to confer on Hodges the general power to make leases to persons not living on the land. While it is true that he is given general charge and supervision over the land, the contract goes ahead and specifies particularly what his duties are and authorizes him to make leases only to persons then on the land. In view of the fact that his duties and powers are thus particularized, the terms of the contract cannot be considered broad enough to include the power to make leases to persons not on the land.

It remains to consider what is the effect of the contract made by Hodges, as agent of and in the name of the Flat Rock Coal Company. As a matter of fact, the Flat Rock Coal Company no longer existed. It had been divested of all title to the lands. As before stated, the proof conclusively shows that none of the joint owners, with the exception of Geary, ever authorized the making of the lease either in their names or in the name of the Flat Rock Coal Company. The proof further shows that Geary himself was not authorized in behalf of the other co-owners to do anything with respect to the land unless with their consent and approval. But the point is made that Geary's co-owners ratified the lease by accepting and retaining the rent which plaintiff paid. It may be conceded that a co-tenant not joining in a lease may ratify it by accepting and retaining his portion of the rent with knowledge of the circumstances under which it was paid. The proof in this case shows that plaintiff paid $25.00 in rent to Hodges, the agent. Hodges says that he supposes it went in with the rest of the little funds that he collected. On being asked: "Did you keep it yourself or pay it to the owners of the land?" he answered: "I could not say. Under the instructions I had from Mr. Geary, I was to take my own expenses out of whatever was paid on the property, but whether or not that $25.00 went to Geary or I used it, I could not say." This is all the proof on the question of ratification. It does not show that Geary's co-owners, with knowledge of the fact that the lease had been made and the $25.00 had been paid thereon, received and retained any portion of that sum or derived any benefit therefrom in any settlement which they made with Hodges, the agent. On the contrary, the evidence shows that the co-owners, other than Geary, never knew of the lease in question, or of any payments made thereon, until the summons was served on them in this case. That being true, the evidence fails to show ratification by them. The lease not having been authorized or ratified by Geary's co-owners, it follows that it is invalid so far as they are concerned.

What is the effect of the contract so far as Geary is concerned? The contract purports to have been made by the Flat Rock Coal Company as principal, by Hodges as its agent. It is the rule that a principal may be charged upon a written simple executory contract entered into by an agent in his own name within his authority, although

the name of the principal does not appear in the instrument, and was not disclosed. Ford v. Williams, 21 How. (U. S.), 287, 16 L. Ed., 36; Eastern R. Co. v. Benedict, 5 Gray (Mass.), 561, 66 Am. Dec., 384, 2 C. J., 683. This is true, notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, for it is held that such proof does not contradict the writing but only explains the transaction. And where, as in this instance, the contract purports to be made in the name of a company, we see no reason why it may not be shown by parol who were the members of the alleged company and whom it was intended to bind by the agreement, in view of the fact that the co-owners of the land company frequently did business with respect to the land in question in the name of such company. We, therefore, conclude that the contract, though not binding on the other tenants in common, because not authorized by them, is binding on Geary, who did authorize it. It remains to determine the extent of his liability. Where property is owned by several tenants in common, a lease by one or more of them is not valid as to those who do not join in the lease, but operates merely to make the lessee a tenant in common with the owners. Du Rette v. Miller, 60 Ore., 91, 118 Pac., 202, Ann. Cas., 1913d, 1163 and note; Zeigler v. Brenneman, 237 Ill., 15, 86 N. E., 597; 7 R. C. L., Sec. 73 page 878. In authorizing Hodges to make the lease, Geary did not assume to be the sole owner of the land, nor did he vest Hodges with authority to make the lease in his name alone. His letter to Hodges cannot be construed to give Hodges any other authority than to make a lease in the name of the co-owners. The effect of the contract in question, therefore, is the same as if Hodges had purported to make the lease in the name of Geary and the other co-owners. Since the lease was effective only as to Geary's interest in the property, Geary's liability for a breach thereof is not the same as if he were the sole owner of the property, since all that plaintiff has been deprived of is the right to occupy and use the land for pasturage in conjunction with the other co-owners. In a case like this, it is very difficult to determine the precise measure of damages. Ordinarily, where the lessor refuses to comply with the terms of a lease, the measure of damages in an action by the lessee is the difference between the agreed rent and the rental value of the premises. Devers v. May, 124 Ky., 387. By its terms

the lease was to terminate when the land was sold. As before stated, the land was sold on September 10th, 1910. The sale was confirmed on October 10th, 1910, though a deed was not made to the purchaser until May 18th, 1912. Manifestly, the sale became effective, not when the deed was made but when the sale was confirmed. It further appears that the agreed rent was for the whole of the premises and not for Geary's portion thereof. Geary owned about an undivided one-third interest in the land. In our opinion, the proper measure of damages is the difference between one-third of the agreed rent, including one-third of the reasonble cost of fencing, and one third of the rental value of the land up to October 10th, 1910. In determining the rental value of the land, plaintiff will be permitted to introduce evidence tending to show its value for pasturage purposes, but will not be permitted to show the probable profits which he would have realized from the use of the land. Kelley v. Davis, 8 Ky. L. Rep., 58, 24 Cyc., 922.

Since the trial court assumed in its instruction that Geary was responsible for all damages following the breach of the rental contract, it follows that the instruction and judgment based thereon are erroneous.

Wherefore, the appeal is granted and the judgment reversed for a new trial consistent with this opinion.