## Louisville National Bank, et al. v. Richard Ritter, Incorporated.

(Decided May 22, 1925.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Joint Adventures—Contract Between Owner of Green Hides and Tanner Held Agreement to Pay Stipulated Price for Tanning and Not Joint Enterprise.—A contract between owner of green hides and tanner, which stipulated that price of tanning was eighteen cents per pound, held agreement to pay that price for tanning was not a joint enterprise, although contract further provided that in case tanner did not buy hides they should be sold and the profits equally divided.

2. Banks and Banking—Tanner's Lien on Leather Prior to Lien of Pledgee of Tanner's Receipt.—Tanner's lien on leather held first lien on goods and prior to lien of bank, to which tanner's receipt for hides had been pledged as security.

LAWRENCE S. LEOPOLD and ALLEN P. DODD for appellants.

CHARLES T. RAY and DUFFIN, RAY, VANCE & DUFFIN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

The Louisville National Bank was the plaintiff below, and will herein be referred to as the bank. Nathan Marx & Sons Company and Jack F. Marx, who will herein be referred to as Marx, were defendants below, and Richard Ritter, incorporated, who will be referred to as the tanner, was another defendant. The bank was asserting a lien upon certain rough leather in the hands of the tanner, upon which the tanner was also asserting a lien for his tannage. The court adjudged to these parties liens for the sums prayed for, but adjudged the tanner to have the first lien, from which judgment the bank appeals.

On August 4, 1920, Marx made with the tanner a contract, the essential part of which is:

"Nathan Marx & Sons Co.

"We acknowledge receipt of   .   .   .   1,000
Green Salted . . . hides, weight . . . 49,788
pounds . . . to be tanned . . . to the rough
stage. The price of tanning these hides . . .

will be eighteen (18) cents per pound green salted weight. In case we do not buy the hides or leather, it is further agreed upon between Nathan Marx & Sons Co. and Richard Ritter, both corporations, that the leather be sold and the profits therefrom made be divided equally between the two corporations. The hides being in at 26 cents per pound. This letter acts as a warehouse receipt. We also have this day insured the above hides for $13,000.00, for which Nathan Marx & Sons Co. and Richard Ritter, Inc., will each stand one-half of the premium.

"RICHARD RITTER, Inc.,
Per WM. O. RITTER, Pres,"

"Accepted, Nathan Marx & Son Co.,
Per J. F. Marx, Pres."

As soon as he received this contract, Marx pledged it to the bank to secure a loan of $15,308.00. On October 21, 1920, a similar contract was made between Marx and the tanner, by which the tanner was to tan 59,051 pounds of hides at the same price, the only difference being that in this second contract, the parties agreed that in event the hides were sold and there were any profits to be divided, these hides were put in at thirty cents per pound instead of twenty-six cents. Marx pledged this contract to the bank to secure a loan of $8,066.94. Previous to making these contracts, Marx had purchased a large stock of hides, the market value of which had declined. He had pledged these hides to the bank for a large sum of money. The hides were deteriorating. Ritter's tannery was idle, and Marx and the tanner made these contracts. Marx and the bank were anxious to prevent these hides going to ruin, and did not want to pay out any cash for tanning them. The tanner wanted to keep his tannery working. All parties contemplated that the rough leather would sell more readily than the green hides, and after the leather was tanned to the rough stage, it would keep indefinitely. The market grew worse instead of better. The parties could never agree upon any disposition of the leather, and shortly after they made the contracts, they began to dispute about their rights under the contracts. The tanner claimed an artisan's lien for tanning the hides, and he claimed that was the first lien upon the leather. The lower court so adjudged. The bank claimed it had, by virtue of its warehouse receipts, a first lien on the leather for the amount of its debts. Marx claimed

that this was a joint adventure in which Marx and the tanner were to share profits and losses under the first contract in this way: 26/44 to Marx and 18/44 to the tanner, and that under the second contract, the profits and losses were to be divided between Marx and the tanner, 18/48 to the tanner and 30/48 to Marx. There were no profits. The cost of tannage was approximately $20,000.00, the leather when sold brought approximately $13,000.00.

The bank obtained a judgment against Marx for the sums named in the notes, to secure which these contracts were pledged, and its complaint is that under the court's judgment, it was given a second lien, hence got none of the money for which the leather was sold. Therefore it appealed.

The trial court gave the tanner a judgment against Marx for approximately $20,000.00 for tanning these hides and Marx has appealed, and is complaining of this judgment. He says that he never did agree to pay for tanning these hides. It is true the contract does not expressly set out that Marx agrees to pay eighteen cents per pound for this tannage, but the contract does state "the price of this tannage will be 18 cents per pound." Marx agreed to pay that price when he accepted the contract. A man goes to a hatter and selects a hat, and the hatter tells him the price of the hat is $5.00, the man says that he will take it, and walks out, he has impliedly promised to pay the hatter the price of $5.00 for the hat. To our mind, this case is just as simple as the hat transaction. This was not a joint adventure, and after this contract was made, these hides did not belong to both Marx and the tanner, with the profits or losses to be shared as contended above. They belonged to Marx. The tanner so recognized the ownership and gave Marx warehouse receipts for them. Marx so interpreted the contract and took these warehouse receipts and pledged them as security for his debts. The bank had before it the contract these parties had made. It could not have been deceived. It follows, therefore, that the court's judgment is correct. The judgment is affirmed. Judge Dietzman not sitting.