## Moore et al. v. Stanfill.

(Decided October 3, 1930.)

J. W. CRAFT for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On April 22, 1922, the appellants, who had purchased from the Kentucky Union Company all its right, title, and interest in and to the Stephen G. Reid survey covering a large acreage of land in Perry and Leslie counties, entered into a written agreement which reads:

"Whereas, Roger T. Moore, Wm. Pursifull, E. M. Combs, H. H. C. Faulkner, Samuel M. Wilson, B. P. Wootton, are the owners of all the right, title and interest in and to the Stephen G. Reid 55,000 acre survey of date 11th day of April, 1872, lying and being in Perry County, Kentucky, and purchased from the Kentucky Union Company on the 8th day of April, 1922, and also at a decretal sale, and whereas, each of the said parties named herein have contributed an equal amount of money toward the payment for said survey and title.

"Now, it is understood and agreed between the parties, and in consideration of said payments, that each of the parties named shall be entitled to a one-sixth interest in and to said land.

"It is further agreed among the parties hereto that H. C. Faulkner, S. M. Wilson, Roger T. Moore and B. P. Wootton, who are attorneys, shall render their services in any litigation that may arise in quieting title to said survey, or any suits to recover land held by said survey, without making any charge against the parties or pool herein named.

"It is further agreed and understood that Wm. Pursifull who has maps, surveys, title papers and blue prints of said survey, and other surveys and patent conflicting therewith, and is in possession of

data with reference to the title to same, that he shall furnish tracing, blue prints, title papers, and all information he has with reference thereto which may be needed in any suits in which the parties may become involved over the title to said Reid patent, without charge for said data or his services in getting up same.

"It is therefore agreed among the parties hereto that any other expenses incurred in litigation in which they may become involved over said survey shall be borne equally by the parties hereto.

"Given under our hands this April 22, 1922."

At this time the appellee was a member of the law firm of Faulkner, Stanfill & Faulkner, of which H. C. Faulkner, his father-in-law, was the senior member. Appellee knew all about this agreement. Immediately after it had been entered into, the parties began to plan the steps necessary to clear up the title to the lands they had purchased. The appellee voluntarily offered and gave his services in this planning and in the preparation of the suits which were later brought to clear the title. These suits were filed in the late summer or fall of 1923. The parties to the litigation selected five of the suits which had been filed as typical ones embodying all the questions at issue between them and agreed to try only those five. After the suits had been filed they practically lay dormant until after the beginning of the year 1925. On January 1st of that year the appellee withdrew from the firm of Faulkner, Stanfill & Faulkner, and entered upon the practice of law independently. He admits that up to this time, whatever he had done for the appellants in the litigation that had been started to clear the title of their lands had been done as a gratuity and without the expectation of any fee. He testifies, though, that in the spring of 1925 the appellant Pursifull approached him and asked him to go ahead with the preparation and trial of the pending cases; that he told Pursifull that he had withdrawn from the firm of Faulkner, Stanfill & Faulkner and therefore no longer had any interest in helping Judge H. C. Faulkner in these suits; that Pursifull replied that the lawyers who under the agreement were to furnish their services in this litigation did not seem to be interested in it, and as he had

too much tied up in it to let the cases go, he would see to it that appellee would be paid if the appellee would go ahead with the preparation and trial of the suits. Appellee says that relying upon this assurance of Pursifull he went ahead with the preparation of the cases and, as indeed this record shows, did a great deal of work in preparing them for trial, taking depositions not only in Perry county but also in Lexington and in Louisville, and spending some time at Frankfort in the land office of the state. His expenses on these trips were paid by Mr. Pursifull, who was later reimbursed, as we shall presently point out. Pursifull denies that he made the statements attributed to him by the appellee and says that he supposed the appellee was going ahead with these suits on the same basis as he had been doing prior to the time he left the firm of Faulkner, Stanfill & Faulkner. In April, 1926, these cases were ready to be tried by the circuit court. On March 27, 1926, Mr. Stanfill wrote to the appellants the following letter:

"March 27, 1926.

"Mr. W. M. Pursifull,
 "Hazard, Ky.
"Mr. B. P. Wootton,
 "Hazard, Ky.
"Judge H. C. Faulkner,
 "Hazard, Ky.
"Mr. E. M. Combs,
 "Combs, Ky.
"Mr. S. M. Wilson,
 "Lexington, Ky.
"Mr. Roger T. Moore,
 "Paris, Ky.

"Gentlemen:

"I am writing you in regard to the suits of Roger T. Moore v. Kentucky River Coal Corporation, etc., now pending in the Perry Circuit Court, of which five are now being prepared for trial at this time, and some fifteen more are pending on the docket of the Perry Circuit Court.

"Before these suits were instituted you gentlemen entered into a written agreement among yourselves whereby it was provided that you were each to

have a one-sixth interest in and to the lands held by Roger T. Moore under the Reid patent, and it was further provided that the attorneys who were parties to the agreement were to give their services in the preparation of the suits for trial. I doubt if any of you at that time entertained an idea of the vast amount of work necessary to prepare these cases.

"I was not a party to that agreement, and was not consulted in any manner about its contents. However, when the time arrived when you *wanted* the petitions prepared in the suits, I was then consulted and was asked to prepare the petitions. I did devote considerable time to this and in all I think there were filed about twenty-one cases. I had been consulted at various times in regard to the lands and was asked to and did give my opinion about the preparation of the suits and petitions before the suits were filed, and spent considerable time in going over various maps in the office of Mr. Pursifull and in going over the various tract maps prepared by Mr. Pursifull.

"When the time came to take depositions in the five cases we had picked out for preparation and trial, I was asked by Mr. Pursifull, Mr. Wootton and Judge Faulkner, and I think Mr. Moore, to take these depositions. Mr. T. E. Moore and I did take the deposition of Mr. S. M. Boggs in each of the five cases, and Mr. T. E. Moore later assisted me in the taking of the deposition of Mr. Roger T. Moore. Aside from this, I have taken every bit of the evidence and cross-examined every witness who has been introduced in these cases.

"We now have these cases about prepared for trial; that is, the evidence is practically completed or will be by the time our April court begins. I have actually spent up to this time more than 60 days of my time in taking this evidence, and from the information I gather from Mr. Wheeler who represents the defendants, we will have at least 15 days more of actual taking of their depositions, and possibly more, making in all a total of at least 75 days' work. Much of this time was spent away from home and of course away from my office and my place of business. Just how much I cannot say; but for each and every

of these 75 days, I have been taken away from my office and my only place of business, even when these depositions were taken in Hazard.

"When you consider that there are not more than 300 working days in the year, you will readily see that the time I have given to the taking of these depositions amounts to at least one-fourth of a year, and when you take into consideration the other work I have been forced to do in connection with these cases, I am sure you will realize that this case must have taken up at least 25 days more of my time, although I have kept and could keep no accurate account of the actual days. But I am sure twenty-five days is not too large an estimate, thus making one hundred days in all devoted to these cases, or one-third of a whole working year.

"As you all know I am not able to devote this time to these cases without adequate compensation. You all very well know that my only means of livelihood is by my law practice, and these cases have taken up from one-fourth to one-third of a year of my time. I feel that I should be paid for this time, and I am therefore taking the matter up with you in this way for that purpose.

"I believe that this proposition would be fair to all parties concerned: That you pay me at the rate of $12.50 per day, which is hardly ordinary wages, and is the amount we have paid the various surveyors for 75 days or the actual number of days shown to have been devoted to the taking of the evidence in these cases, making a total of $937.50, and in addition to this give to me an undivided interest in this land; as I understand it you each own a one-sixth undivided interest at present, and by paying me for this time and giving me an equal interest in the title, each of you and myself would then own a one-seventh undivided interest, and you six men bear the expenses incurred jointly, that is, each of you bear the proportionate part you have already agreed to bear. In other words, by expense I mean the cost of the preparation of the suits, and of the acquiring of the title, etc.

"Or, if you do not care to do this, pay me at the rate of $25.00 per day, for the actual time I have spent in the preparation of the evidence in these

cases, which would be about $1,875.00, and you gentlemen keep the interests you each own in the same proportion you now have.

"When you consider all the work done and the fact that about three-fourths of the evidence taken in these five cases will apply to each of the other twenty or more cases filed and to be filed and will, therefore, not have to be taken in the preparation of the other cases for trial, thereby making the preparation of the other cases a comparatively simple matter, and the work done by me on these cases aside from the taking of the evidence, I believe this charge is very reasonable.

"In preparing these cases, Mr. Pursifull has advanced practically all of the expenses incurred, but I have been forced to advance the sum of $169.25, and I of course expect to be paid this advancement at once, as I am not financially able to carry it myself.

"I am calling your attention to this matter at this time because of the fact that it is of great importance to me to have it settled, and because I need my money now. I want the matter settled before the cases are submitted for trial at the coming April term of our court, and I think each of you will agree with me that I am entitled to have it settled before the cases are tried; and in this way we can understand each other and I can know just what I am to have before the cases go to trial."

Appellee testifies that after this letter was written and dispatched, Pursifull again assured him that he would be paid for his work and that Pursifull told him that Moore had written him (Pursifull) a letter stating that anything that Pursifull did was satisfactory to him. Appellee further testifies that Wootton did not commit himself further than to say that appellee ought to be paid something, as did also Judge Faulkner. Appellee admits that he never had any communication, verbal or written, from Combs. He says that Judge Wilson said that any arrangement the others made would be agreeable to him. All of this testimony of the appellee is denied by these appellants. At all events, appellee argued these cases at the April, 1926, term of the court, and they were decided in favor of the appellants. Thereafter the cases were appealed to the Court of Appeals.

On March 31, 1927, Mr. Stanfill wrote the following letter to the appellant Judge Wilson:

"Several days ago the appellants in the case of Kentucky River Coal Corp. v. Roger T. Moore, etc., filed their brief in the Court of Appeals, and sent a copy to Mr. T. E. Moore, Jr. Some two or three days afterwards Mr. Moore handed this copy to me. Mr. Pursifull and Mr. B. P. Wootton were both out of town and I informed Mr. Pursifull of the filing of the brief on yesterday as soon as he returned home. Mr. Wootton is still absent and I understand he will be absent for some two weeks or more.

"As I understand the rules of the Court of Appeals, cases from this district are always set for Friday after the term opens; the spring term opens April 11, and therefore this case will be set for the following Friday, which will be April 15. Brief for appellee is due ten days before that time. Appellants' brief is about 300 pages. It would be almost impossible for anyone to prepare brief for appellee within the time.

"Mr. Pursifull has asked me to write you these facts and ask you to secure an extension of time for the preparation and filing of appellees' brief or briefs. The case really should be continued, I suppose, with time to file brief extended until July 15th or August 1st, as it will take probably three months to prepare the brief, unless some one of you give the whole of your time to it, in which event it might be prepared in a month.

"I would suggest, also, that arrangements be made between you as to who is to do the work of briefing this case. I might say to you, frankly, that I do not feel like briefing the case, *especially in view of the fact that all of the parties concerned have entirely ignored my letter of March 27, 1926, in which I asked that some arrangements be made to pay me for services performed in the preparation of the case.* I asked that this be done before the case was tried in the circuit court but nothing was done, and feeling that proper arrangements would be made with me, I did assist, as best I could, in the trial below. *However, not one of the parties in interest has even acknowledged receipt of my letter, nor have either of them ever said to me that they expected to recom-*

*pense me.* It is entirely probable, I take it, that my services are not further desired.'' (Italics ours.)

Before being briefed for the Court of Appeals by any one, the cases were settled by the payment to the present appellants of the sum of $10,000, which just about covered what they had paid out for the survey and for the expenses they had incurred in the preparation of these suits with interest on both sums. In May, 1928, the appellee filed this suit against the appellants to recover for the services he had rendered them in the litigation above set out. It did not clearly appear from the petition as filed whether appellee was seeking to recover on a quantum meruit, or on an express contract. A motion was made to require him to elect upon which theory he would rely, but before the motion was passed upon, the appellee elected to rely upon an express contract. This being traversed, the parties went to trial and the jury found a verdict for the appellee in the sum of $2,000. From the judgment entered on that verdict, this appeal is prosecuted.

The main insistence of the appellants upon this appeal is that they were entitled to a peremptory instruction. They plant themselves upon the proposition that a party may not declare on an express contract and recover on an implied one, even where the evidence would support the latter one, and argue that the evidence in this case wholly fails to establish an express contract. That the proposition of law upon which the appellants rely is sound is settled by a long line of decisions in this state. O'Kain v. Davis, 186 Ky. 184, 216 S. W. 354; Martin v. Wheeler, 226 Ky. 834, 11 S. W. (2d) 961, 962. In this last case we said:

> ''Appellee declared upon an express contract, but proved only an implied contract, and, as he failed to amend his pleading to conform to the proof, as he might have done, . . . the appellant's motion for a peremptory instruction should have been sustained.''

Does the evidence establish an express contract? The original agreement entered into by the appellants with each other was not a partnership agreement. It was

simply an arrangement among cotenants of real estate providing for the apportionment of duties and of expenses of litigation in connection with the property they owned. Appellee knew from the outset all about this agreement, and hence he knew that Pursifull had no express or implied authority to employ him as counsel in these land suits. So far as the appellant Combs is concerned, there is no evidence that he ever did or said anything with reference to appellee's work on these law suits. There is no showing that he ever expressly employed appellee or ever did a thing that in any manner even suggested a ratification of appellee's claimed employment by Pursifull. He was not bound as a partner, for there was no partnership shown here. Hence it is clear that the court should have sustained his motion for a peremptory.

So far as the remaining appellants, except Pursifull, are concerned, the evidence wholly fails to establish any direct employment of appellee by them. Appellee's letter of March 27, 1926, and his testimony given in this case show that appellee had prepared the land suits for trial after he had withdrawn from the Faulkner firm on the idea that he had been employed by Pursifull for that purpose. His letter of March 31, 1927, to Judge Wilson, wherein he says that the parties to whom he had written the letter of March 27, 1926, had ignored that letter, had not even acknowledged its receipt, and had never said to him that they expected to recompense him, refutes the claim now made that the conversations which appellee says he had with some of these appellants after he wrote the letter of March 27, 1926, amounted to a ratification of what he says Pursifull had done. At the best, these conversations were very general in the scope of their content and appellee's last letter conclusively shows that they were not at the time regarded by any one as committing the parties to anything. The appellants say these conversations never took place, and appellee's letter of March 31, 1927, tends to corroborate them. But if they are mistaken in this and if appellee be correct, yet this letter of March 31st so clearly establishes that the conversations were not then regarded as constituting an express contract, either original or by ratification, that they cannot be now insisted upon as constituting a meeting of the minds of the parties. It therefore follows that the

motion of all of the appellants except Pursifull for a peremptory instruction in their behalf should have been sustained.

So far as Pursifull is concerned, however, the motion for a peremptory was properly overruled. The appellee testified to an express employment of him by Pursifull long before either of the letters herein set out was written and after Pursifull knew that he had withdrawn from the Faulkner firm and would no longer handle the pending litigation unless new arrangements were made with him. With such knowledge, Pursifull, he says, employed him. Pursifull denies this employment, but it was for the jury to say which version of the transaction it believed. That the exact amount of compensation to be paid appellee for his services was not stated, did not keep the contract from being an express one, the obligation of Pursifull under his express employment of appellee being to pay a reasonable fee. However, the case will have to be reversed as to Pursifull, also, because in submitting to the jury the question of the amount of the fee which appellee was entitled to recover, the trial court based in part that amount upon the results obtained for all the appellants and the services rendered to them all. As appellee knew that Pursifull had no authority to employ him for the other appellants and as appellee's letters show he never regarded Pursifull's employment of him as an employment by the other appellants, his employment by Pursifull was limited to services to be rendered to Pursifull. The reasonableness of the fee for such services will, then, depend on what Pursifull had involved in such litigation and what results were obtained for him. In Axton v. Vance, 207 Ky. 580, 269 S. W. 534, may be found a statement of the elements determining the reasonableness of an attorney's fee. The court's instruction on the amount of the fee should be confined to the services rendered Pursifull and the results obtained for him.

The judgment is therefore reversed, with instructions to grant the appellants a new trial in conformity with this opinion.