## Clark v. Smith et al.

(Decided Dec. 15, 1933.)

· J. J. TYE for appellant.

H. H. OWENS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In the latter part of February, 1930, John G. Matthews, who then resided in Seattle, Wash., conveyed jointly by quitclaim deed to appellant and one of the defendants below, W. T. Clark, and appellee and the other defendant below, J. S. Smith, certain described tracts of land lying in Knox and Clay counties, Ky. The consideration was $500, one half of which was cash and the other half due in six months and evidenced by a note. The cash consideration was advanced by J. S. Smith, and it was refunded, and the payment of the note was made with proceeds of timber that the vendees sold from the land after obtaining their deed, as augmented by sales of oil and gas leases by them. On August 28, 1931, the appellee and plaintiff below, Joe Smith, filed this equity action in the Knox circuit court against the two grantees in the deed, and alleged in his petition that he was contemplating buying the land from Matthews, and that, while he was intending to commence negotiations therefor (but before he began to do so), defendants proposed to him that, if he would desist therefrom, and allow them to continue their then existing negotiations to make the purchase, they would permit him to become a one-third joint owner, if they succeeded in buying the land, and that he consented thereto and abandoned any contemplated efforts to purchase the land himself; that they violated that agreement and understanding, and took the deed jointly to themselves, and refused to execute the alleged trust in his favor by conveying to him a one-third undivided interest in the land. He prayed for a declaration of trust in his favor to a one-third ownership in the land, and for a division thereof by selling it and dividing the proceeds among its three owners, giving to each one-third thereof.

The defendant J. S. Smith answered and admitted the facts as so averred in plaintiff's petition, and also joined him in his prayer for a sale of the land for division. But the defendant W. T. Clark in his separate answer denied plaintiff's alleged constructive trust

ownership in any part of the land, and he also put in issue the necessity of selling any of it for the purposes of division, because, as he averred, it could be divided in kind; but which relief to be accomplished in any manner was not available to plaintiff, since he was not the owner of any part of the land. However, J. S. Smith, plaintiff's joint owner, was entitled to a division either in kind or by a sale of the property. Following pleadings made the issues and the court upon submission, after proof taken, decreed a trust in favor of plaintiff to the extent that he claimed, and adjudged that the land could not be divided in kind and ordered a sale of it for that purpose. From that judgment Clark prosecutes this appeal, making the two Smiths appellees.

The trust sought to be established by plaintiff in his favor is one of a class known in the law as "constructive" trusts, and "fraud, active or constructive, is their essential element." They are bottomed on principles akin to the doctrine of equitable estoppel, and are sometimes referred to as "trusts ex maleficio or ex delicto." See 39 Cyc. 169. Since they arise by operation of law from certain essential facts upon which they rest, they do not come within the statute of frauds requiring duly executed writings for their support, and may therefore be established by parol testimony. See same volume, 170, and Faris v. Dunn, 7 Bush, 276; Gibson v. Bartley (Ky.) 123 S. W. 324 (not elsewhere reported); Davis v. Spicer (Ky.) 128 S. W. 294 (also unreported elsewhere); and Patrick v. Prater, 144 Ky. 771, 139 S. W. 938. At common law such trust arose in favor of the one who paid the consideration for the land from that fact alone; but section 2353 of Carroll's Kentucky Statutes, 1930 edition, modified that common-law rule, and confined its operation to the creation of a trust in favor of the payer of the consideration only when the deed was taken by and to another as grantee "without the consent of the person paying the consideration," or where the grantee in "violation of some trust, shall have purchased the lands deeded with the effects of another person." Since plaintiff in this case neither furnished, nor became bound for, any part of the consideration for the land purchased by the vendees, no such trust would arise in his favor under the principle of the common-law rule referred to, or as modified by

the section of our statutes supra, and, if he is entitled at all to the relief he seeks, it is upon other recognized grounds for the establishment of such trusts, chief among which is fraud, and which must generally grow out of a promise, express or implied by the constructive trustee to take the title in his own name and hold it for the benefit of the constructive cestui que trust, but in violation thereof took it to himself, whereby the alleged beneficiary of the trust sustained injury.

More frequently than otherwise it grows out of promises to purchase land at judicial sales for the benefit of an interested party, but which are violated and the purchase is made in the name of the actual bidder and for his exclusive benefit. However, a case might arise in transactions purely inter partes giving the right to invoke the doctrine. See 26 R. C. L. 1238, sec. 85, and page 1244, sec. 90. But the evidence to establish the trust will be closely scrutinized and weighed by the court, and, since its effect is to overturn the written muniment of title held by the alleged trustee, its weight "must be greater than a mere preponderance." 26 R. C. L. 1251. See, also, to the same effect 39 Cyc. 192, wherein the text says: "A constructive trust can not be established by a mere preponderance of evidence, but must be established by evidence which is clear, definite, unequivocal and satisfactory." Approving that rule are the domestic cases of Wright's Adm'r v. Wright, 108 S. W. 266, 32 Ky. Law Rep. 1223; Carter v. Dotson, 92 S. W. 600, 29 Ky. Law Rep. 155; Planters' Bank & Trust Co. v. Major, 79 S. W. 264, 25 Ky. Law Rep. 1969; Deaver-Kennedy Co. v. Cooper, 189 Ky. 366, 224 S. W. 1053; Neel's Ex'r v. Noland's Heirs, 166 Ky. 455, 179 S. W. 430, 433; Foushee v. Foushee, 163 Ky. 524, 173 S. W. 115; Trasher v. Craft, 242 Ky. 101, 45 S. W. (2d) 827; Chilton's Adm'r v. Shelley, 243 Ky. 576, 49 S. W. (2d) 305, and others referred to in those opinions.

Conceding for the purposes of this case only that such a trust would arise from the facts relied on by plaintiff, but refraining from determining that question, there still remains the further question of whether or not the testimony to support it is sufficient for that purpose, under the established rule, supra. As to the appellant, Clark, we are clearly convinced that it should receive a negative answer. The undisputed testimony develops that the grantor of the land, Matthews, owned

number of tracts situated in Knox and Clay counties, the title to some of which was doubtful. He also owned mineral rights under other tracts, and he conveyed to the two grantees in his deed all the interest he had or claimed in and to all of the land and all of his mineral rights. Prior thereto he had by letter requested B. P. Walker, then sheriff of Knox county, to effect the sale for him, and constituted Walker his agent for that purpose. Clark saw that letter, and immediately began negotiations to purchase the land and the mineral rights, and which culminated, after about two months of negotiations for the purpose, in the execution of the deed by Matthews, and which was done pursuant to a telegram sent him by Clark, who in the meantime had agreed with J. S. Smith for the latter to be an equal partner in the venture. He (J. S. Smith) testified that he later approached the plaintiff, Joe Smith, and suggested to him that, if he would withdraw as a prospective negotiator for the purchase of the land, he would be taken in as a third owner, if Clark and J. S. Smith were successful in their efforts to procure the title. But we do not understand his testimony to be that he had mentioned that subject to his partner, Clark, before the transaction was completed, nor is it clear as to exactly when his conversation with Joe Smith occurred with reference to the time of the execution of the deed by Matthews. But, under our conclusion from the facts, it is immaterial whether that conversation preceded or followed the execution of the deed, since we are convinced that, whatever may have been its nature and effect, it was entirely without the knowledge or consent of Clark, who was the chief actor in effecting the transfer.

Plaintiff in giving his testimony was asked and answered:

"Q. Did you have any negotiations with John G. Matthews about purchasing the lands in controversy in this case before same was bought? A. Nothing only me and B. P. Walker was talking about it and I was going to take it up with him and then J. S. Smith came to me and said that we would buy it and go partners in it.

"Q. Why did you stop negotiating for this land? A. Because Jim Smith come to me and told me if I

would not, if I would not buy it that they was on a trade for it and we would go in partners.''

It will be observed that on the occasion he was approached by J. S. Smith, and which was the time when the promise upon which the trust in his favor is sought to be built, he had done nothing except to converse with Walker "about it," and that he was "going to take it up with him" (Walker). He had at that time entered into no negotiations of any kind with Matthews either personally or with his agent, Walker; nor did he testify that it was his fixed intention and purpose to prosecute any contemplated negotiation to a successful termination. In other words he, at that time, only intended preparing to commence to fix to get ready to start to begin launching efforts looking to his possible purchase of the land, and from which it is doubtful if the oral agreement was effective for any purpose on J. S. Smith who made it. But inasmuch as he has not appealed from that part of the judgment against him we will not determine the question.

However, Clark absolutely denied any knowledge, consent, or agreement on his part for Joe Smith to have any share in the benefits of the purchase, either before or after it was made, nor does plaintiff claim to have ever spoken to him upon the subject. But it is insisted in behalf of plaintiff that some remarks made by Clark at a garage in Barbourville, Ky., contradicted the denials he made in his testimony in the case; but he also denied making any such remarks, and he was sustained therein by others who were also present. J. S. Smith further testified that, when he first mentioned the matter to Clark, it was in the way of a suggestion to the effect that, since Joe Smith was a man of some means, it might be wise to take him in as a third owner of the title to the land, and that Clark then said, in substance: "Possibly so," or "that might be a good thing." J. S. Smith nowhere testified positively that he was ever authorized and directed by Clark to take in Joe Smith as an equal partner in the transtaction. Therefore we conclude that, so far as appellant is concerned, the evidence does not measure up to the rule supra, so as to burden the interest that he obtained under the Matthews deed with the trust sought to be established by plaintiff.

The law is, that one joint owner of land cannot, by

his own unconsented to agreement, burden the interest or title of his joint owner, and that, when he enters into any such transaction not consented to by his associates in interest, or thereafter ratified by him or them, it attaches only to his aliquot part ownership and is not obligatory on any of the others. Tucker v. Phillips, 2 Metc. 416; Womack v. Douglas, 157 Ky. 716, 163 S. W. 1130; Geary v. Taylor, 166 Ky. 501, 179 S. W. 426; Ann. Cas. 1913D, 1164, note; Lawrence v. Fielder, 186 Ky. 324, 216 S. W. 1068, 1069. See, also, 7 R. C. L. 876, sec. 71, and 33 C. J. 913, secs. 22 and 23, and cases cited in the notes. That being true, the greatest effect that may be given to the transaction between Joe and J. S. Smith would be to incumber the interest of the latter with the trust in favor of the former, and which the court so declared and from which J. S. Smith has not appealed.

The court also directed a sale of the property and a division of its proceeds, which we are convinced was erroneous. The land consists in a number of tracts of considerable aggregate acreage, and which is sufficient of itself to support a division in kind, to say nothing about the testimony introduced by defendant Clark on that issue. However, the judgment appealed from directed a division of the land between three alleged equal owners when, as we have determined, the prayer for a division, if sustained at all, should have been sustained solely on the cross-petition of J. S. Smith and made only between him and the defendant Clark; in other words, a division into only two parts. Whether the court would have so adjudged if it had found against the trust, which we have determined should have been done so far as the interest of Clark was concerned, and then order a division of J. S. Smith's half equally between him and Joe Smith, is a matter of conjecture. At any rate, no such division was directed, but which is the only one that the court was authorized to decree as affecting appellant's interest. Under the circumstances, we conclude that the judgment directing a sale of the land for the purposes of division should also be reversed.

Wherefore the judgment in its entirety is reversed, with directions to divide the property in kind giving to the appellant, Clark, one half, and the other half jointly to J. S. and Joe Smith, if they consent to such joint ownership of that half; but, if either of them insist

upon a division of their half, then the court will so decree and make the division either in kind, or through a sale of it after the appellant, Clark, has been allotted his portion, and for other proceedings consistent with this opinion.