## Manning et al. v. Owens.

Jan. 20, 1939.

P. L. SENTERS, Judge.

TUGGLE & TUGGLE for appellants.

HIRAM H. OWENS for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

This is an appeal from a judgment against appellants for $500 for legal services of appellee in certain litigation. Since appeal Judge Tinsley has died and it is revived against his personal representative.

In 1919 the Commonwealth forfeited a tract of land in Knox and Clay counties, including a boundary of 2100 acres which later became the subject of litigation out of which this controversy grew. The land was sold and C. P. Kennedy became the purchaser, but prior to execution of deed, assigned his rights to R. L. Blakeman. On December 2, 1920, Blakeman executed a writing in which he declared that while he held title, the purchase was for the joint use of himself, Kennedy and Tinsley, who were tenants in common, in equal interest, and bound himself to make proportionate deeds when demanded by the others.

It is clear from the record that the parties were in some way equally interested in the boundary of land. Blakeman had done considerable preliminary work, surveying, etc. Tinsley had been of assistance in the forfeiture suit, and Kennedy was to pay all expenses attending the forfeiture litigation.

No deeds were executed by Blakeman, though he had in the meantime taken title to himself. This status remained until March 20, 1929 (except that appellant Manning had purchased Kennedy's interest), when Blakeman, to clear his title, filed suit against Flinn et al., who were claiming title to what appears to have been the Nagle patent. The suit resulted in Blakeman's favor, and Flinn appealed from the judgment, which was affirmed, thus validating Blakeman's title. Flinn v. Blakeman, 254 Ky. 416, 71 S. W. (2d) 961. That appeal was filed December 7, 1932, and was finally decided in March 1934, so it will be seen that the litigation was pending in the one court or the other for about five years. In October 1935, appellee instituted suit against Manning, Tinsley and the devisees of Blakeman, he having died before final judgment in the Flinn Case, supra. The Blakeman heirs are not interested in this appeal, since, as we gather from the record, they have settled with appellee.

In his petition appellee, after setting out jurisdictional and historical facts, alleged "that he was employed by Blakeman, as attorney, to prosecute the action against Flinn, involving about 2100 acres of land, and

for his services was to be paid a reasonable sum," such fee to be contingent on success in perfecting title. He says that he was informed by Blakeman of the understanding between himself, Tinsley and Manning that the latter should take care of the litigation, and Blakeman should take care of the surveying, and they would all be equal owners; that an arrangement had been made with A. T. W. Manning to act as counsel, whereby he would receive a sum equal to one-fourth of whatever should be realized out of the litigation. Judge Manning, because of other interests, withdrew from the litigation, and it was agreed that appellee could go into the case on the same terms. Manning had filed a suit for pay for his services up to his withdrawal and had recovered $350.

It was stated that it was further agreed between appellee and Blakeman that he, "and his contractual owners should do all the details in said litigation that could be performed by them in connection with the preparation and trial of the suit, and Blakeman did a considerable portion of the detail work and G. M. Manning assisted in taking some depositions and did some stenographic work." The burden and responsibility of the litigation, it is said, was performed and carried on by plaintiff, and the value of his services is reasonably worth a sum equal to a one-fourth undivided interest. Appellee asserts "that the said Manning and Tinsley * * * took and received the benefits of the service performed by plaintiff herein, and there is an implied contract in law in such cases, and they are bound and obligated to pay the reasonable value for such services."

It is also alleged that after title had been perfected, suit was brought against Blakeman because of non-payment of taxes, followed by a sale and non-redemption. Appellee appeared in this action, and on special demurrer to the petition, saved the land which in the meantime had been sold; that he also defeated another action which sought forfeiture of this and other boundaries for failure to pay taxes. In the prayer of his petition he sought judgment against Manning, Tinsley and the Blakeman heirs "for a reasonable attorney's fee, a sum not less than a sum equal to 25% of the value of said properties."

Appellants filed motion to require plaintiff to elect whether he would prosecute on express or implied contract, and also demurred generally. The court overruled

both motion and demurrer. They answered jointly, and denied the material allegations of the petition, and affirmatively alleged in substance that neither of them had employed appellee to render legal service in the Flinn Case; that neither had notice or knowledge that Blakeman had employed appellee as attorney; that they were joint owners with Blakeman, and the latter was without authority to employ appellee so as to obligate them. It was further said that they, as well as Blakeman, were attorneys, and that they and Blakeman had carried the burden of the litigation and determined the way and manner in which it should be conducted,—an allegation which failed of proof. Appellants suggested that if it be determined that "these answering defendants have received any benefits" by reason of appellee's activities, $150 would be reasonable, and "for the purpose of ending the litigation" they offer to confess judgment for the named sum; however, by amended pleading this offer was withdrawn. A controverting reply completed the issues.

Proof was taken, the greater portion bearing on the value of services. Other proof related to the services rendered; to the matter of the Blakeman contract, omitting such as was tendered by appellee himself, and on the part of appellants to such facts as would tend to support their contentions of non-obligation, and giving their views of the services actually rendered by appellee.

The court upon submission adjudged that appellee should recover of each appellant $500 "under the plea of quantum meruit." Both parties took exceptions to the ruling of the court; both were granted appeals, and the appellee is here on cross-appeal, contending that the allowance was inadequate. The appellants contend that they owe nothing.

It is argued by appellants that the court should have sustained their general demurrer to the petition, since it did not show the existence of an express contract between appellee and Blakeman; that there was no allegation of any contract with Tinsley or Manning, and in the absence of such showing appellee had no cause against either of them.

Another ground is stated to be that though alleged in answer though "not" (manifestly error) denied, it is sufficiently proven that the parties to the Blakeman writing (and their successors) were tenants in common,

and that the law, broadly stated, is that no tenant in common can impose an obligation on his co-tenant or joint owner.

Appellee contends that as a matter of law, though should he be unable to show an express contract with Blakeman, (Section 606, Civil Code of Practice), the law supplies contract and promise to pay in cases where beneficial services were rendered, and where the beneficiary ought to have promised. The only other matter argued is as to the character and value of the services rendered by him, and the results obtained by reason of his services.

At the outset we may say we find little difficulty in arriving at a conclusion that there was an express contract, contingent in nature, as between Blakeman and appellee for the rendition of services by the latter. This is both plead and proven. The pleadings indicate such a contract, the remuneration for services to a reasonable fee. The fact that the exact amount of compensation to be paid appellee was not stated did not keep the contract from being an express one, the obligation being to pay a reasonable fee. Moore v. Stanfill, 235 Ky. 372, 31 S. W. (2d) 610.

That there is plead an implied contract as between appellee, Tinsley and Manning, there can be little doubt, and appellee may be entitled to recover on either grounds if the facts show sufficient basis for recovery.

Counsel for appellants urge that the parties were tenants in common with Blakeman, and that therefore he could not bind or obligate them, and cites a number of authorities as bearing out this contention. Clark v. Smith, 252 Ky. 50, 66 S. W. (2d) 93; Ball v. Clark, 150 Ky. 383, 150 S. W. 359; Geary v. Taylor, 166 Ky. 501, 179 S. W. 426; Womack v. Douglas, 157 Ky. 716, 163 S. W. 1130; Lawrence v. Fielder, 186 Ky. 324, 216 S. W. 1068. In nearly all of these cases there was an attempt to sell, lease or mortgage the jointly owned estate. The Womack Case is an exception. In all of them the general stated rule is that one tenant in common may not without consent encumber the estate. In the Lawrence Case, supra, the court held the non-leasing tenant bound, because the proof was sufficient to show more than mere acquiescence. The exception is, as is well stated in Shelby v. Shelby, 212 Ky. 552, 279 S. W. 942, 944:

"But those cases, as well as text authorities upon the same subject, also hold that, if the objecting joint tenant consents or in any manner ratifies or acquiesces in the renting made by his cotenant or cotenants, the doctrine contended for will not apply, since in that case the renting joint tenant becomes the agent of the objecting one either by actual consent or by adoption through acquiescence and ratification * * *."

The same principle was applied in the Womack Case, which involved the sale of timber by one of the joint owners. However, we need not pursue this discussion further, since we have indicated above that the contract between appellee and appellant (or the predecessor of one) might be characterized as an express or an implied contract. In truth appellee might be entitled to recovery on the ground that the whole transaction was what may be termed a joint adventure, in which case the law relative to partnerships applies. Central Trust Co. of Owensboro v. Creel, 184 Ky. 114, 211 S. W. 421; Louisville Nat. Bank v. Ritter, 209 Ky. 178, 272 S. W. 424.

It is admitted by appellee that after his entry into the case, he never mentioned his contract to either appellant; nor does he claim that he advised them, or that they knew just how he was in the case. He says that title was in Blakeman, and he was employed to protect that title, and that he well knew of the interests of Tinsley and Manning, and that they knew of his service and neither protested nor complained.

Judge Tinsley testified, in substance, that he claimed an undivided one-third interest in the land in controversy; he had assisted in preparing the original petition in the Flinn Case, and later prepared and filed the first amended petition, but had done nothing afterwards. He admits that the parties had employed Judge Manning to prosecute the action, and Blakeman, G. M. Manning and the witness were to assist in the preparation, but Judge Manning was to appear in court and try the case, and was to receive a reasonable fee for his services. Judge Tinsley stated that he had no knowledge or notice of Judge Manning's withdrawal from the case, and did not know under what circumstances appellee entered the case. He testified as to the showing by the records of appellee's activities in

the proceedings. His first knowledge of such activities was when Blakeman, after trial of the case, told him that appellee had represented them, and at that time he made no protest.

While the Judge's testimony is not contradicted it is clear from the record that beyond the preparation or assistance in the preparation of the petition and one amendment, he took no active or further part. During a part of the time the litigation was under way he was a member of this court, and it may be conceived that he was in no position to participate actively in the preparation or trial of the case.

It is also undisputed that when the tract of land was sold he received, as his share of the proceeds, about $4,300 as his distributable share, after payment of approximately $5,000 taxes. And, when we read the entire testimony it is not hard to conceive that there was to some extent a ratification of appellee's services, insofar as Judge Tinsley was concerned, particularly when two situations were apparent. First, that all the parties recognized the propriety, if not the necessity, of having a non-interested attorney present their side of the case. Again, as we view the testimony, the conclusion cannot be escaped that the two non-title holders turned the management of the case almost completely over to Blakeman, who was not only a capable surveyor but recognized as an able land lawyer, though not generally practicing. This situation is made clear from appellant Manning's testimony.

When we come to consider the testimony of appellant Manning, and insofar as his attitude appears, he very nearly makes a case for appellee. He says that Tinsley never appeared in the case; that he, Manning, did very little, aiding in taking some depositions and doing some clerical work. He says Blakeman told him that appellee was "going to help us in it whenever we needed you." Manning admits that his own services were worth only two or three hundred dollars. He also said appellee offered to put up money to save the property during the "hazardous period," provided the parties did not resist his claim for services. He said on examination by his own counsel that Blakeman informed him that appellee "would help us whenever we needed him. He left the impression with me there would never be any difficulty in making a reasonable settlement with

Mr. Owens in the event we got anything out of it." This party in interest admits that the case was a close one, and that he did not understand that the services of appellee were to be gratuitous.

It is unnecessary for us to go further into the proof, and we may rest the main question by saying that there is neither sufficient pleading nor proof to lead to the conviction that there existed any sort of contract between parties in interest and appellee, or even between such parties and the attorney whom he succeeded, that either was to receive a one-fourth interest. Whatever fee was to be paid was a reasonable fee. This is made clear by the testimony of both G. M. Manning and Judge Tinsley, who were the only persons living at the time, save and except Judge Manning, who could give direct testimony on this subject. So, if there was a contract between appellants and appellee by reason of the employment by Blakeman, it was for a reasonable fee, which is generally the basis in recovery on a quantum meruit.

That there was a contract between Blakeman and appellee on the reasonable fee basis there is no doubt. As to whether that carried to the appellants is the only question in which we are concerned. We agree with appellants' counsel on the principle of law advanced, that it is well settled that one joint owner of land cannot, by agreement, burden the title or interest of his co-owner, except when such action is consented to or thereafter ratified in some legally recognized manner. Clark v. Smith, 252 Ky. 50, 66 S. W. (2d) 93.

If it were necessary to enter into argument on this question, it might be pointed out that the action of Blakeman in selecting Owens to succeed Manning (and from the proof this is what happened) in no wise undertook to or did burden the title or interest of the complaining parties. There was not sufficient pleading or proof as would in any way fasten any encumbrance on their interest or title, nor upon the proceeds of the land involved, which was sold in the meantime. Appellee did not plead nor rely on section 107 of the statutes, nor did he make such allegations as would entitle him to a lien as against complainants, or to support a lien against such proceeds as went to them upon sale.

Even if our conclusion on this point should be error, we are fully convinced that when all the proof

is considered, under rather peculiar circumstances in this particular case, there is sufficient showing that the complainants by their acts, or failure to act otherwise than as they did, was sufficient to amount to a consent, undoubtedly in the one case, and to a ratification in both instances. The acceptance of the proceeds of sale after knowledge of the activities of appellee, not only in the Flinn Case in which title was made secure to them, but in two other cases in which the ownership was in some jeopardy, is of no little consequence in reaching our conclusion, and being of that mind we cannot escape the conviction that the complainants are obligated to appellee for a reasonable sum for services rendered. In reaching such conclusion we have not overlooked Moore et al. v. Stanfill, 235 Ky. 372, 31 S. W. (2d) 610, confidently relied on by appellants. That case is not of controlling or persuasive influence, since the facts are so widely divergent. The single point of law discussed in that case is not applicable here.

We shall not enter into a detailed discussion on the question of the reasonableness of the fee allowed. There was much evidence taken on this point, consisting of the testimony of attorneys of standing, most of which was from witnesses called by appellee, and who were propounded a cross-hypothetical question. Naturally there was much disagreement in the cross-hypothetical questions, since each party presented by the questions their respective views of the amount of services rendered, and embodying the differing claims of contract or no contract.

Sufficient it is for us to say, that with all that proof reviewed, as it was no doubt done by the court below, carefully and with consideration of the rights and contentions of both parties, we are constrained to agree with the chancellor's conclusion, hence it follows that we must affirm the judgment on both the original and cross appeals.