# Cape v. Leach et al.

May 14, 1940.

J. C. Carter, Judge.

L. C. Lawrence and Ralph Hurt for appellant.

E. C. Moore and Louis Cox for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

At a sale in a mortgage foreclosure suit, the farm of C. C. Cape was reported as having been sold to his son-in-law, A. W. Leach, for $493.46. The commissioner's deed was executed June 25, 1938. On September 21st following, Leach deeded the land to James A. Loy for the recited consideration of $800. Within the month Cape sued Leach and Loy to set aside the deed and to have it adjudged that Leach held title to the land in trust for the plaintiff, and that he be required to convey it to him upon the payment of the purchase price and accrued interest. Several amended petitions made additional allegations and set up different reasons why the plaintiff was entitled to have the land. Also for interlocutory orders preserving his possession and rights. A legal tender of the amount to Leach was made in court. The court adjudged the plaintiff entitled to no relief and dismissed his petition. He appeals.

We may say at once that the evidence proves that

Loy had actual knowledge that Cape claimed the land and that Leach held title for him. Therefore, the title which Loy acquired was no better than that which Leach had in so far as the appellant's rights are concerned.

It is not unusual at a judicial sale for one person to purchase land and take title for another under an agreement to hold same for his use and benefit until some condition may arise or adjustment be made; but when the existence of such a constructive trust is dependent upon parol evidence it must be proved clearly and convincingly. Clark v. Smith, 252 Ky. 50, 66 S. W. (2d) 93. The sufficiency of the evidence to establish such a trust is the only question before us.

The home of the appellant and his wife, where they had reared a large family, was being sold under foreclosure of a small mortgage. It is manifest that his children could have taken care of the situation for him. Not long before, Cape had undertaken to secure some relief from his debts through one of the federal farm relief plans, known as the Frazier-Lempke Act, 11 U. S. C. A., Section 203, a limited bankruptcy, though this was abandoned. For this reason it was thought better that he should not appear as the purchaser of the land or as principal in the sale bond. Leach had been elected sheriff, and, as is sometimes said, was a "man of parts." The appellant testified positively and persuasively that it was agreed that Leach would bid in the property and that he and another son-in-law would sign the bond as sureties. They did so. Before the bond matured his son, Joe Cape, raised the money on his own individual and unsecured credit and tendered it to Leach. A deed was prepared but Leach insisted that the old gentleman should have only a life estate, his statements indicating that perhaps in the end his, Leach's, wife might not receive all that was coming to her. The deed was not acceptable to Cape and his son. Every one of the several children who testified sustained the claim of their father in one respect or another, particularly as to conversations and admissions of Leach as to what had been done as to arrangements being made to pay him off and for transferring the title to him. Three disinterested witnesses testified that Leach had told them he had bought the place to give the old gentleman a chance. Two of these admissions stood undenied and the other was contradicted weakly.

Leach wrote a letter to one of his wife's sisters, apparently in response to a statement that she had been told by a friend that he was going to "kick out" her father and mother from their home. He was indignant and expressed his anger in having been talked about so much. He wrote that he was ready "to sign this over" whenever she disclosed the name of her friend, and that unless she did so by return mail her mother and father would have no home.

Leach testified that he had no agreement with Cape prior to the sale of the farm about buying it for him. The day before Cape had asked Leach to sign the purchase money bond as surety, but having been elected sheriff, and knowing that he would have to make a bond, he did not want to get mixed up in it. However, the next day he bought the place for himself as a personal investment for the amount of the debt. His was the only bid made. Afterward he told the old gentleman that if he could get his money when the sale bond became due he could have it, and he testified that he had insisted with tears in his eyes that Cape should raise the money. Nobody ever tendered him the money and he never told anybody that he had bid in the property for his father-in-law. He did sign a deed to the old gentleman and his wife giving them a home during their lifetime and the remainder to his son, Joe Cape, who was paying Leach off, but this deed was not acceptable as the old man and Joe both wanted it conveyed to the former. There is some corroboration of Leach's version of the negotiations with Joe Cape as to the conveyance, but upon the principal questions Leach stands alone.

In our opinion the record establishes the plaintiff's claims clearly and convincingly and shows that Leach took an unconscionable and fraudulent advantage of his father-in-law.

The judgment is reversed with directions to sustain the prayer of the petition.